IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JUSTIN RASHAD FORREST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | )  No. 16-1070-JDT-cgc |
| | ) |
| MADISON COUNTY, ET AL., | ) |
| | ) |
| Defendants. | ) |

ORDER GRANTING FIRST MOTION TO AMEND (ECF No. 6),
DENYING REMAINING MOTIONS (ECF Nos. 7 & 8),
DISMISSING ALL CLAIMS, CERTIFYING AN APPEAL
WOULD NOT BE TAKEN IN GOOD FAITH AND
NOTIFYING PLAINTIFF OF RESTRICTIONS UNDER 28 U.S.C. § 1915(g)

On April 8, 2016, Plaintiff Justin Rashad Forrest, who is incarcerated at the Federal Correctional Institution in Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 accompanied by a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) In an order issued April 11, 2016, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 5.) On December 8, 2016, Forrest filed a motion to amend his complaint. (ECF No. 6.) The amendment is intended to supplement, rather than supersede, the original complaint. Therefore, the motion is GRANTED. The Clerk shall record the defendants as Madison County, the State of Tennessee, the City of Jackson,[1] Jackson Police Department (JPD) Investigators Michael Parson and

---

[1] Although Plaintiff has named the Jackson Police Department as a defendant, the Department is not a separate entity that is suable apart from the City of Jackson.

Tyreece Miller,[2] JPD Officer Terry Dyer, Assistant District Attorney Jody S. Pickens, and Public Defender Susan D. Korsnes.[3]

On January 11, 2017, Forrest filed a motion for appointment of counsel (ECF No. 7) and a second motion to amend (ECF No. 8). The second motion to amend is actually a motion asking the Court to issue process for the Defendants. Given the dismissal of this case, both the motion to issue process and the motion to appoint counsel are DENIED.

I. The Complaint

In his complaint, Forrest largely attempts to re-try his criminal case. He alleges that in December 2006 Defendant Dyer and his partner were looking for two burglary suspects, Shawn Greer and Michael Greer, when they came to a residence where Plaintiff was staying. (ECF No. 1 at PageID 7.) Although Forrest told Defendant Dyer the Greers were not there, Dyer asked him for his name, date of birth and social security number, which Forrest provided. (*Id.* at PageID 8.) Two hours later, Defendant Dyer returned and arrested Forrest on a warrant for violating probation; Forrest was placed in the back of a patrol car. (*Id.*)

At that time, one of the burglary suspects, Sean Greer, was spotted by Defendant Dyer, who handcuffed Greer and placed him in the patrol car with Forrest. (*Id.* at PageID 8-9.) Dyer and his partner took both Greer and Forrest to the scene of the burglary, allegedly so Greer could be

---

[2] Plaintiff misspelled Defendant Miller's first name as Tyress in the complaint, but the correct spelling is Tyreece. *See* www.cityofjackson.net/police-department/deputy-chief-tyreece-miller. The Clerk is DIRECTED to modify the docket to reflect the proper spelling.

[3] Plaintiff also purports to sue "John Doe" defendants. Service of process cannot be made on an unidentified party, and the filing of a complaint against such defendants does not toll the running of the statute of limitation against those parties. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968).

2

identified by the victims, Greer's aunt and cousin. (*Id.* at PageID 9.) Forrest alleges it was illegal to take him to that crime scene because it had nothing to do with him. (*Id.*) The officers then took Forrest to the Madison County Criminal Justice Complex (CJC), where he was booked for the violation of probation. (*Id.*) The next day, Forrest appeared before a judge, who allowed him to serve 48 hours in the CJC rather than requiring him to perform community service. (*Id.* at PageID 9-10.) Forrest served the 48 hours and was released without any other pending charges, warrants or detainers. (*Id.* at PageID 10.)

Forrest was again arrested by the JPD and Madison County Sheriff's Department as a result of events that occurred on January 21, 2007, and charged with several offenses. (*Id.* at PageID 5.) Forrest alleges that while he was incarcerated on those charges, Defendant Dyer and his partner made statements in which they "changed" the description of the second suspect in the earlier December burglary to fit Forrest's description even though Michael Greer previously had been identified as the second suspect by Greer's aunt and cousin. (*Id.* at PageID 10.) Forrest alleges that the burglary charge was placed on him by Defendants Parson, Miller and Dyer. (*Id.*)

Forrest alleges that he wanted to go to trial on all of the charges, but Defendant Korsnes refused to review any of the discovery or file any pretrial motions. (*Id.* at PageID 6.) Instead, she allegedly tried to compel Forrest into accepting a plea agreement because Defendant Korsnes, "'. . . was not doing nothing that Jody S. Pickens did not want [her] to do in this case.'" (*Id.*) Forrest contends that Defendants Korsnes and Pickens had all of the pertinent discovery prior to trial, including two positive identifications of the two other suspects in the burglary from a photo line-up done by Defendants Parson and Miller; Forrest's photo was not in the line-up, so he not identified as a suspect. (*Id.* at PageID 11-12.)

3

Forrest contends that he had no choice but to accept the state's plea offer, which called for a 15-year sentence to run concurrent with the sentence imposed on a related federal charge.[4] (*Id.* at PageID 11.) However, he alleges that Defendants Korsnes and Pickens were aware that the state and federal sentences actually could not run concurrent and, therefore, did not put the federal authorities on notice of the state convictions. (*Id.* at PageID 12.) Forrest further alleges that the state trial judge accepted the plea while knowing he did not have jurisdiction to order a federal sentence to run concurrent with the state sentence. (*Id.*)

Forrest's later motion to correct an illegal sentence pursuant to Tennessee Rule of Criminal Procedure 36.01 was granted by the Madison County Circuit Court on November 26, 2014. (*Id.* at PageID 13.) Forrest was allowed to withdraw his plea agreement, and the charges were reinstated. (*Id.*) However, at a motion hearing on July 17, 2015, the trial judge ordered all of the charges dismissed, on motion of the prosecutor. (*Id.* at PageID 14; *see also* ECF No. 1-3 (order of dismissal).) Plaintiff alleges the charges were dismissed because the "government employees" knew he was not the person who committed the crimes. (*Id.* at PageID 14.) However, the order itself states only that the prosecution's witnesses had advised "that the crimes occurred but that they had gone on with their lives and refuse to attend the Court." (ECF No. 1-3.)[5]

---

[4] On November 20, 2007, this Court sentenced Forrest to a 264-month term of imprisonment after he pleaded guilty to a charge of possessing a firearm after having been convicted of a felony. *United States v. Forrest*, No. 07-10058-JDT (W.D. Tenn.). However, on August 15, 2017, the Court entered an amended judgment re-sentencing Forrest to time served after granting his motion pursuant to 28 U.S.C. § 2255 on the basis of the decisions in *Johnson v. United States*, 135 S. Ct. 2551 (2015) and *United States v. Stitt*, 860 F.3d 854 (6th Cir. 2017). *See Forrest v. United States*, No. 16-1097-JDT-egb (W.D. Tenn. Aug. 14, 2017).

[5] Forrest states that he asked the trial judge at the hearing whether the "government employees" were admitting that he did not commit the crimes and that in response the judge
(continued...)

Forrest alleges that he was maliciously prosecuted and sent to prison for crimes that he did not commit and that his Fourth, Sixth, Eighth, and Fourteenth Amendment rights were violated due to negligence, failure to properly train employees, and failure to follow state and federal laws. (*Id.* at PageID 15.) He further asserts claims of libel, slander, deceit and misrepresentation. Forrest alleges he suffered mental anguish. (*Id.* at PageID 5-6.) Forrest seeks injunctive relief as well as compensatory and punitive damages. (*Id.* at PageID 22-24.)

II. Analysis

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v.*

---

[5](...continued)
stated, "the charges never happened and that is why the prosecutor for the state was dismissing the charges." (*Id.*) That is not an accurate statement of what occurred. According to the transcript of the July 17, 2015 hearing, a copy of which Plaintiff attached to the complaint, the order of dismissal was read into the record verbatim. (ECF No. 1-4 at PageID 13-14.) Forrest then asked the trial judge, "'Cause on that, they constantly saying the crime was occurred, but does that mean that this didn't never – that when they did – that that didn't never happen . . . .?" (*Id.* at PageID 14.) The trial judge responded, "Mr. Forrest, I'm going to make it real simple. It means the charges against you where I set aside your convictions are now dismissed." (*Id.* at PageID 14-15.) The trial judge did *not* tell Forrest that the order of dismissal meant the prosecution was conceding he had not committed the crime.

5

*Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). "[P]leadings that . . . are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). "Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Id.* (citing *Neitzke*, 490 U.S. at 328-29).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness.

*Id.* at 471 (citations and internal quotation marks omitted).

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt

from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Plaintiff filed his complaint under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

7

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Forrest has no claim against Madison County. None of the individual Defendants are employees of Madison County. Furthermore, the Madison County Circuit Court, the official title of which is the Circuit Court for the Twenty-Sixth Judicial District of Tennessee, is established pursuant to state law. *See* Tenn. Code Ann. § 16-1-101 ("The judicial power of the state is vested in judges of the courts of general sessions, recorders of certain towns and cities, circuit courts, criminal courts, common law and chancery courts, chancery courts, court of appeals, and the supreme court, and other courts created by law."). Thus, there are no factual allegations in the complaint concerning the actions of Madison County.

Forrest's official capacity claims[6] against Defendants Pickens, Korsnes, Dyer, Parson and Miller are the equivalent of claims against their employers. For Pickens and Korsnes, the official capacity claims are against the State of Tennessee. For Dyer, Parson and Miller, the official capacity claims are against the City of Jackson.

Forrest cannot sue the State of Tennessee under 42 U.S.C. § 1983. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign

---

[6] It is not entirely clear whether Forrest is suing the individual Defendants in their official capacities, as he alleges that they acted in their "own minist[erial] and individual capacities." (ECF No. 1 at PageID 2.) While the Court is not certain whether Plaintiff's use of the term "ministerial" is intended to mean "official," it will be construed as such.

State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. *See* Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

The complaint does not assert a valid claim against the City of Jackson. When a § 1983 claim is made against a municipality or county, the court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality or county is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).

A local government "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal

link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." *Alkire*, 330 F.3d at 815 (quoting *Monell*, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)).

Although civil rights plaintiffs are not required to plead the facts demonstrating municipal liability with particularity, *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993), the complaint must be sufficient to put the municipality on notice of the plaintiff's theory of liability, *see, e.g., Fowler v. Campbell*, No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007); *Yeackering v. Ankrom*, No. 4:05-CV-00018-M, 2005 WL 1877964, at *2 (W.D. Ky. Aug. 5, 2005); *Oliver v. City of Memphis*, No. 04-2074-B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004); *cf. Raub v. Corr. Med. Servs., Inc.*, No. 06-13942, 2008

10

WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (denying motion to dismiss where complaint contained conclusory allegations of a custom or practice); *Cleary v. Cnty. of Macomb*, No. 06-15505, 2007 WL 2669102, at *20 (E.D. Mich. Sept. 6, 2007) (same); *Morningstar v. City of Detroit*, No. 06-11073, 2007 WL 2669156, at *8 (E.D. Mich. Sept. 6, 2007) (same); *Chidester v. City of Memphis*, No. 02-2556 MA/A, 2006 WL 1421099, at *3 (W.D. Tenn. June 15, 2005). The complaint does not adequately allege that Forrest suffered any injury arising from an unconstitutional policy or custom of the City of Jackson. While he vaguely alleges a policy of failure to train, that allegation appears to relate to the actions of Defendants Pickens and Korsnes in allegedly allowing him to be sentenced illegally.

The individual capacity claims against Defendants Pickens and Korsnes are barred by the doctrine of claim preclusion or *res judicata*. "A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies." *Montana v. United States*, 440 U.S. 147, 153 (1979) (ellipses and internal quotation marks omitted). "Courts apply the doctrine of *res judicata* to promote the finality of judgments, which in turn increases certainty, discourages multiple litigation and conserves judicial resources." *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992). "Under the doctrine of claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998) (internal quotation marks and alteration omitted); *see also Allen v. McCurry*, 449 U.S. 90, 94 (1980) (same).

> Claim preclusion applies when (1) there is a final decision on the merits in the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) there is an identity of claims between the first and second actions.

*Heike v. Cent. Mich. Univ. Bd. of Trs.*, 573 F. App'x 476, 480 (6th Cir. 2014).

Each of these requirements has been satisfied. This Court issued an order on the merits in *Forrest v. Pickens, et al.*, No. 14-1283-JDT-egb (W.D. Tenn. Sept. 9, 2015), dismissing the action for failure to state a claim. The claims raised against Pickens and Korsnes in that case were the same claims raised in the complaint in this case, namely that the Defendants worked together to coerce him into a plea agreement to serve concurrent state and federal sentences but which actually resulted in consecutive sentences. Any differences in the allegations and legal theories in the present suit and case number 14-1283 does not entitle Forrest to litigate the claim in a second lawsuit. "A plaintiff should have litigated two claims in his or her first suit, and thus may not litigate the second claim later, where, as here, the two claims arose from the same transaction or series of transactions." *Heike*, 573 F. 3d at 482 (internal quotation marks omitted).

Even if Forrest's claims against Pickens and Korsnes are not barred by *res judicata*, he has no valid claims against them. As the Court held in the prior suit, attorneys do not act under color of state law when acting as counsel in a criminal proceeding, even if they are public defenders who are employed by the government, like Defendant Korsnes. *See Polk Cnty. v. Dodson*, 454 U.S. at 325. In addition, Pickens is entitled to absolute prosecutorial immunity from damages because the acts complained of were taken in the course of his role as an advocate for the State of Tennessee. *Imbler v . Pachtman*, 424 U.S. 409 (1976); *Burns v. Reed*, 500 U.S. 478 (1991). Absolute immunity

also applies to a prosecutor's professional evaluation of evidence assembled by the police. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

Forrest's claims against Defendants Parson, Miller, and Dyer for false arrest and/or false imprisonment are time barred. The statute of limitations for a § 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *see also Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985). The limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tennessee Code Annotated § 28-3-104(a)(1). *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000); *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986). A claim for false arrest or imprisonment accrues at the time of arrest or, at the latest, when detention without legal process ends. *Wallace v. Kato*, 549 U.S. 384, 391-92, 397 (2007).[7] The Sixth Circuit

---

[7] In *Wallace*, the Supreme Court explained:

> Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process* — when, for example, he is bound over by a magistrate or arraigned on charges. . . . Thereafter, unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process. . . . "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." . . . Thus, petitioner's contention that his false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected. It ended much earlier, when legal process was instituted against him, and the statute [of limitations] would have begun to run from that date.

(continued...)

has held that a Fourth Amendment claim based on an allegedly unlawful arrest accrues at the time of arrest. *Fox v. DeSoto*, 489 F.3d 227, 233, 235 (6th Cir. 2007). Forrest was arrested on January 21, 2007. This action was filed over nine years later on April 8, 2016, more than eight years after Forrest was sentenced in the state-court proceeding.

Forrest also asserts a claim for malicious prosecution. The requirements for a malicious prosecution claim under § 1983 are as follows:

> The Sixth Circuit "recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment," which "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006) (internal quotation marks omitted). The "tort of malicious prosecution" is "entirely distinct" from that of false arrest, as the malicious-prosecution tort "remedies detention accompanied not by absence of legal process, but by wrongful institution of legal process." *Wallace v. Kato*, 549 U.S. 384, 390, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007) (internal quotation marks omitted). . . .
>
> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007); *see also McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005); *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001); *Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002). Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution, *Fox*, 489 F.3d at 237; *Voyticky*, 412 F.3d at 675. Third, the plaintiff must show that, "as a consequence of a legal proceeding," the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007); *see Gregory v. City of Louisville*, 444 F.3d 725,

---

[7](...continued)
*Id.* at 389-90 (emphasis in original; footnote and citations omitted); *see also id.* at 390 n.3 ("This is not to say, of course, that petitioner could not have filed suit immediately upon his false arrest. While the statute of limitations did not begin to run until petitioner became detained pursuant to legal process, he was injured and suffered damages at the moment of his arrest, and was entitled to bring suit at that time.").

14

> 748-50 (6th Cir. 2006) (discussing the scope of "Fourth Amendment protections . . . beyond an initial seizure," including "continued detention without probable cause"); *cf. Heck v. Humphrey*, 512 U.S. 477, 484, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) ("[U]nlike the related cause of action for false arrest or imprisonment, [an action for malicious prosecution] permits damages for confinement imposed pursuant to legal process."). Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. *Heck*, 512 U.S. at 484, 114 S. Ct. 2364 ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.").

*Sykes v. Anderson*, 625 F. 3d 294, 308-09 (6th Cir. 2010) (additional citations and footnote omitted); *see also Marcilis v. Twp. of Redford*, 693 F.3d 589, 604 (6th Cir. 2012) ("In order to prove malicious prosecution under federal law, a plaintiff must show, at a minimum, that there is no probable cause to justify an arrest or a prosecution." (internal quotation marks and citation omitted)).

Forrest alleges that the Defendants charged him with the December 2006 burglary even though the victims had identified Michael Greer as the second suspect. He alleges that Defendant Dyer later "changed" the description of the suspect to match Forrest's description. However, Forrest also alleges that Dyer and his partner originally had no specific description of the suspect — apparently because they believed, at the time, that they were looking for a person who had already been identified. (ECF No. 1 at PageID 9-10.) The fact that the Defendants may have issued a description of the suspect only after failing to find Michael Greer does not adequately allege that the prosecution of Forrest was without probable cause.

For the foregoing reasons, Forrest's complaint is subject to dismissal in its entirety.

### III. Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per

curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court concludes that leave to amend is not warranted.

## IV. Conclusion

The Court DISMISSES Forrest's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend is DENIED.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to

service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the third dismissal of one of his cases as frivolous or for failure to state a claim.[8] This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

---

[8] *See Forrest v. Pickens, et al.*, No. 14-1282-JDT-egb (W.D. Tenn. Sept. 9, 2015) (dismissed for failure to state a claim), and *Forrest v. Ray, et al.*, No. 10-cv-00495-TAV-ccs (E.D. Tenn. Jan. 4, 2011) (dismissed for failure to state a claim).

Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Consequently, Plaintiff is warned that he will be barred from filing any further actions *in forma pauperis* while he is a prisoner within the meaning of 28 U.S.C. § 1915(h) unless he is in imminent danger of serious physical injury. Under those circumstances, if any civil action filed by Plaintiff is not accompanied either by the civil filing fee or by allegations sufficient to show that, at the time of filing the action, he is in imminent danger of serious physical injury, the complaint will be filed, but Plaintiff will be required to remit the full civil filing fee. If he fails to do so, the case will be dismissed, and the filing fee will be assessed from his inmate trust account.[9]

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[9] Plaintiff is further cautioned that, if he attempts to evade the § 1915(g) restriction by filing actions in other jurisdictions that are then transferred or removed to this district, the Court may impose a monetary sanction in the full amount of the civil filing fee.